UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MACHELLE BITTON and KHISHA BADGER, individually and on behalf of all others similarly situated, | ) ) ) ) Civil Action No. 2:17-cv-02580 |
| Plaintiffs, | ) ) Honorable Jan E. Dubois |
| v. | ) ) ) *ELECTRONICALLY FILED* |
| JD PALATINE, LLC, and HEALTHCARE SERVICES GROUP, INC., | ) ) ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

AND NOW, come Defendants, JD Palatine, LLC, and Healthcare Services Group, Inc. (collectively "Defendants"), by and through their undersigned counsel, and file the following Response to Plaintiffs' Motion to Compel, and in support thereof, state as follows:

**I.      INTRODUCTION**

In their Motion to Compel and Request for Sanctions, Plaintiffs suggest to this Court that Defendants have outright refused to respond to discovery in this case. They are wrong. To the contrary, Defendants have produced over 44,000 documents, have made available a 30(b)(6) witness for deposition, and have provided Plaintiffs with substantial information related to the central issues in this matter. Specifically, JD Palatine already produced substantial class data related to the claims asserted against it and Healthcare Services Group produced all file materials and documents in its possession related to the two named Plaintiffs, who, up until last week, only asserted individual claims against Healthcare Services Group. In filing their Motion to Compel[1] Plaintiffs ignore: (1) the production limitations faced by Defendant JD Palatine, a local

---

[1] Defendants recognize that this is Plaintiffs' second Motion to Compel. Notably, the Court granted Plaintiffs' first Motion to Compel (ECF No. 18) only nine days after its filing (ECF No. 19), despite Defendants having 14 days under the local and chamber rules to file their opposition. Nevertheless, Defendants continued to work tirelessly to produce as many responsive documents as possible, as quickly as possible, to comply with the Court's deadline.

consumer reporting operation that employs less than 70 individuals; (2) the number of documents that have been produced to date, on a rolling basis; and (3) the July 24, 2018 agreement between the parties to limit the scope of production.  Defendants will address these points individually.

## II.     RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

### A.     To fully respond to discovery, JD Palatine has to review 3.5 million reports.

In Plaintiffs' First Amended Complaint, they allege that JD Palatine reported antiquated information on respective consumer reports in violation of the Fair Credit Reporting Act ("FCRA").  (ECF No. 3).  The first class claim includes all individuals "beginning five years prior to the filing of the Complaint and continuing through the resolution of this action, who were the subject of any consumer report prepared by JD Palatine, which included any non-conviction criminal record which antedated the report by more than seven years."  (*Id.* at ¶ 90).  The second class is defined as any person for the same time period to whom JD Palatine provided a consumer file disclosure that included any public record.  (*Id.* at ¶ 91).

Early on, JD Palatine informed Plaintiffs that for the two years preceding the filing of the First Amended Complaint, it prepared **1.4 million reports**.  That number, for five years, exceeds 3 million.  Outside of the sheer volume of production, JD Palatine does not have the capability to sort the reports to identify only those that are within the class definition and thus, responsive to various production requests[2].  JD Palatine also cannot "batch download" all 3 million reports.  Thus, JD Palatine's only option to respond to discovery requires that it review over 3 million reports manually to identify those that fall into Plaintiffs' class definition.  Save for shutting down JD Palatine's entire operations to have every employee working on this request, it is

---

[2] TazWorks, JD Palatine's document software provider, prepared a Declaration explaining the restrictions placed within the software for the end-user.  *See* Declaration of Scott Kimball, Ex. A.

patently unreasonable and nearly impossible. Plaintiffs have been aware from the outset of this litigation of these production limitations.

In light of this significant hurdle, JD Palatine agreed to produce all reports for its scoring clients—specifically those clients and consumers where, based on client specifications, JD Palatine rendered an applicant or employee "declined" for employment based on the contents of his or her report. Plaintiffs agreed to this limitation for purposes of mediation and those reports have since been produced. Plaintiffs did not confer with Defendants following this production and instead filed a Motion to Compel.

### B. Defendants have produced over 44,000 documents to date.

While formal *written* responses have not been exchanged, Defendants have produced over 44,000 pages of documents. Additionally, Defendants have produced various documents setting forth relevant data to help the parties limit the scope of discovery, including data that represents: (1) the total number of consumer reports; (2) the total number of reports for specific clients; (3) the total number of reports that had a "hit[3];" and (4) the total number of consumers who were adjudicated by JD Palatine as "declined" for employment based on the contents of the report. Plaintiffs agreed to accept this data to narrow the scope of discovery. JD Palatine also made its 30(b)(6) witness available for deposition before mediation.

Aside from the nearly 12,000 consumer reports produced in two months, JD Palatine has produced all of its policies and procedures, all of its contracts with its vendors, and all of its contracts with its clients. JD Palatine has also produced the names of every employee who worked on the relevant files, the complete files of named-Plaintiffs, all related correspondence, and all documents related to its relationship with Healthcare Services Group. Thus, it is entirely

---

[3] A "hit" under JD Palatine's definitions could be anything from a traffic violation to a felony conviction and any non-criminal product offered by JD Palatine (i.e., nurses aid registry, drug test, etc…).

inaccurate and disingenuous for Plaintiffs to represent that Defendants have refused to respond to discovery.

### C. The parties agreed to a limited document production on July 24, 2018.

On July 24, 2018, the parties agreed to a limited production of discovery. The limited production required that the following be produced/confirmed prior to mediation:

- JD Palatine was to confirm whether it has access to information to ascertain how many consumers are part of the 1681g class;

- JD Palatine was to produce a representative sample of reports, limited to August, September, and October 2016;

- JD Palatine would produce complete discovery responses apart from producing every report issued by JD Palatine; and

- Healthcare Services Group would produce, to the extent not part of JD Palatine's productions, the documents related to its policies and procedures regarding the FCRA and documents pertaining to named-Plaintiffs.

*See,* July 24, 2018 String of Correspondence, Ex. B. Throughout the two months leading up to mediation, the parties held numerous telephone conferences where they discussed JD Palatine's document production limitations. *See,* September 4, 2018 Email Correspondence, Ex. C. JD Palatine exhausted its resources to attempt to identify the most efficient way to identify the class. After communicating its findings to Plaintiffs' counsel on August 27, 2018 and again on September 4, 2018, Plaintiffs' counsel communicated that they understood, had not given up on suggestive alternative means to identifying the class, and would follow up with JD Palatine. *See* September 5, 2018 Email Correspondence, Ex. D. They never did.

JD Palatine, working overtime and ceasing work on its client matters, produced over 44,000 pages of documents in those two months, representing over 12,000 consumer reports and other documents that had been requested of it in discovery. These reports included a sample of the 2016 reports requested by counsel. As for Healthcare Services Group, JD Palatine had

already produced the complete files for named-Plaintiffs, all of the matrix documents provided by Healthcare Services Group to JD Palatine regarding the FCRA, and every agreement and addendum between the two companies, setting forth each company's respective obligations for FCRA compliance. Thus, Defendants both produced all the documents that the parties agreed they would[4].

### III. CONCLUSION

After mediation was unsuccessful on September 21, 2018, this Motion to Compel was the first time Defendants heard from Plaintiffs' counsel regarding lifting the production limitations and requesting full and complete responses. Defendants were thus not on notice of Plaintiffs' intention to re-open their discovery demands, to require full and complete responses, only just learning of such request with this filing.

Nevertheless, Defendants have compiled most of the outstanding discovery documents and information and will formally respond to discovery as required by this Court. JD Palatine, however, is unable to respond to several of Plaintiffs' discovery requests, unless it reviews over 3 million reports, which is overly burdensome and not contemplated by Rule 34.

Similarly, the request for depositions of Chad Killian and Zack Mack referenced in Plaintiffs' Motion is the first time that Defendants received this request since the parties agreed to cancel the March 2018 depositions. But, Defendants will make Chad Killian and Zack Mack available for depositions. Accordingly, Defendants request that the Court afford Defendants until November 16, 2018 to respond to discovery (with the limitations noted above) and require

---

[4] In Plaintiffs' First Amended Complaint, the *only* claims brought against Healthcare Services Group were two individual claims by each named-Plaintiff related to their respective experience with JD Palatine's background reporting process. Because the claims were limited solely to named-Plaintiffs, it was reasonable for the parties to agree to this limited production, to which Healthcare Services Group has complied.

that the parties mutually agree to hold the depositions of Chad Killian and Zack Mack at a date and time on or before November 30, 2018.

Defendants request, however, that Plaintiffs' request for sanctions be denied. Defendants' conduct is not the type of "abusive" conduct required under the standard for sanctions nor does it rise to the level of misconduct that would warrant an award of sanctions. *See N'Jie v. Cheung,* No. 9-919, 2010 U.S. Dist. LEXIS 84269, at *22 (N.J. D.C. Aug. 16, 2010) (holding that sanctions in the form of reasonable counsel fees was not warranted where the plaintiffs provided responses to discovery demands, despite being deficient and untimely, because the conduct was not abusive or egregious). Defendants' conduct and discovery responses were influenced by the numerous agreements between the parties, including their final agreement on July 24, 2018. Because Defendants have engaged in every effort to comply with discovery, and continue to do so, Plaintiffs' request for sanctions must be denied.

Dated:  October 31, 2018                          Respectfully submitted,

                                                  JACKSON LEWIS P.C.


                                                  By: */s/ Marla N. Presley*
                                                      Marla N. Presley, Esq.
                                                      PA I.D. No. 91020
                                                      marla.presley@jacksonlewis.com
                                                      Joanna M. Rodriguez, Esq.
                                                      PA I.D. No. 318853
                                                      joanna.rodriguez@jacksonlewis.com
                                                      1001 Liberty Avenue, Suite 1000
                                                      Pittsburgh, PA  15222
                                                      Telephone:  (412) 232-0404
                                                      Facsimile:   (412) 232-3441

                                                      *(Counsel for Defendants)*